**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROL-LORIE O. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>BLUETRITON BRANDS,<br><br>Defendant. | Civil Action No. 25-3337 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon four separate motions: (1) Defendant BlueTriton Brands's ("Defendant" or "BlueTriton Brands") Motion to Dismiss (ECF No. 11) Plaintiff Carol-Lorie O. Smith's ("Plaintiff") Complaint (ECF No. 1-2); (2) Plaintiff's Motion for Default Judgment (ECF No. 13); (3) Plaintiff's June 23, 2025, Motion for Summary Judgment (ECF No. 14); and (4) Plaintiff's June 29, 2025 Motion for Summary Judgment (ECF No. 16).[1] Plaintiff opposed Defendant's Motion to Dismiss (ECF Nos. 15, 17)[2], and Defendant replied (ECF No. 20). Defendant opposed Plaintiff's Motion for Default Judgment (ECF No. 18), and Plaintiff replied (ECF No. 23). Defendant opposed Plaintiff's two Motions for Summary Judgment in a consolidated opposition (ECF No. 19) and Plaintiff replied (ECF No. 22). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local

---

[1] The Court collectively refers to Plaintiff's motions (ECF Nos. 13, 14, 16) as "Plaintiff's Motions" in this Memorandum Opinion.

[2] Plaintiff appears to advance identical arguments in both opposition filings. (*See* ECF Nos. 15, 17.) For the purposes of this Memorandum Opinion, the Court cites to ECF No. 15 as Plaintiff's opposition.

Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss (ECF No. 11) is granted and Plaintiff's Motions (ECF Nos. 13, 14, 16) are denied as moot.

I. **BACKGROUND**

    A.     **Factual Background**[3]

Plaintiff began purchasing Poland Spring water in September 2021 after she relocated to East Windsor, New Jersey. (Compl. 2, ECF No. 1-2.) Sometime thereafter, Plaintiff claims she "experienced an influx of stomach pains and burning, hair loss, difficulty losing weight, [polycystic ovary syndrome], and loss of eyesight," but she "continued to drink the water not paying attention [to] the immediate effects of the water[.]" (*Id.* at 3.) Plaintiff claims that her eyesight became "increasingly worst [*sic*]" and she also developed migraines. (*Id.*) For Plaintiff, "hot tea, specifically, was exceptionally difficult to drink." (*Id.*) "Plaintiff[,] upon drinking the water one day[,] realized that there was a burning after sipping on the water[,]" but Plaintiff did not experience that same burning after "[eating] a lollipop." (*Id.*) Plaintiff claims she then "drank Arizona Iced Tea while eating her meal" and "belched loudly." (*Id.*) Plaintiff typically "had difficulty eating because of drinking the water" and realized that when she drank the water, "she ha[d] not been belching." (*Id.*) Upon this realization, Plaintiff "purchased Bowl and Basket purified water and noticed that there was exceptionally less burning, if any; an increase in eyesight; a reduction in pain; . . . the ability to drink more water; an increase in fingernail growth; and added and more peaceful sleep." (*Id.*) Plaintiff claims that she then researched the manufacturer of the Poland Spring water and "discovered that Nestle had a history of selling defective and subpar water." (*Id.*)

---

[3] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Plaintiff, therefore, claims that Defendant violated her rights by: (1) "manufactur[ing], market[ing], and [selling] Poland Spring Water, knowing that the product was below adequate performance standard, lacked adequate warnings or instructions, and was designed in a defective manner"; (2) being negligent when Defendant "knowingly and without care sold Plaintiff defective water"; (3) "assault[ing] and batter[ing] Plaintiff by knowingly selling the defective product"; and "caus[ing] intentional infliction of emotional distress to Plaintiff[.]" (*Id.* at 2.) As a result of this purported harm, Plaintiff claims she is entitled to damages totaling to three billion dollars and seeks an injunction requiring Defendant to "recall the defective water, or to make a public service announcement about the quality of the water and add sufficient labeling disclosing such information." (*Id.*)

B.  **Procedural Background**

In August 2024, Plaintiff, proceeding *pro se*, initially brought this case in the Superior Court of New Jersey, Mercer County, naming as defendants Nestle S.A., BlueTriton Brands, Poland Spring Water, Nestle Water, and "their subsidiaries." (*Id.* at 1; Pet. for Removal *1[4], ECF No. 1.) In March 2025, Plaintiff subsequently filed an Amended Complaint in state court naming only BlueTriton Brands and its subsidiaries. (Pet. for Removal *2.) Shortly thereafter, the state court dismissed all named defendants other than BlueTriton Brands from the matter for failure to prosecute under New Jersey state law. (*Id.*) In April 2025, Defendant removed the matter to this Court. (*See generally* Pet. for Removal.) The Court identifies five counts alleged in the Complaint: (1) product liability under the New Jersey Product Liability Act (the "NJPLA") ("Count One");

---

[4] Page numbers preceded by an asterisk refer to the page numbers noted in the ECF header.

(2) negligence ("Count Two"); (3) assault ("Count Three"); (4) battery ("Count Four"); and intentional infliction of emotional distress ("Count Five"). (*See generally* Compl.)

Defendant moves to dismiss the Complaint because: (1) the NJPLA is the exclusive remedy for Plaintiff's claims which all stem from harm caused by a defective product and Plaintiff has failed to state a claim under the NJPLA; and (2) even if the NJPLA does not provide an exclusive remedy, Plaintiff has otherwise failed to state a claim for the remaining causes of action. (Def.'s Moving Br. 4-11, ECF No. 11-1.)

## II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure[5] 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show

---

[5] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

4

that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.   DISCUSSION

The Court finds that: (1) Plaintiff's common-law claims are subsumed by the NJPLA and should therefore be dismissed; and (2) Plaintiff has failed to state a claim under the NJPLA. The Court addresses each finding below.

####   A.   Subsumption Under the NJPLA

Defendant first argues that the NJPLA serves as the exclusive remedy for all of Plaintiff's claims because the claims stem from harm allegedly caused by a defective product. (Def.'s Moving Br. 4-5.) Plaintiff opposes, arguing that Counts Two through Five are not subsumed by the NJPLA because "[i]ntentional torts . . . have an element of intent or knowing, and negligence . . . is a tort where harm is caused by carelessness or failure to exercise reasonable care[,]" and "[t]hese areas are separate areas of law and should be treated as such." (Pl.'s Opp'n Br. 3-4, ECF No. 15.)

The NJPLA provides that:

> [a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2. The NJPLA defines "product liability action" as "*any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim*, except actions for harm caused by breach of an express warranty." *Id.* § 2A:58C-1(b)(3) (emphasis added). The term "harm" is defined to include "physical damage to property, . . . personal physical illness, . . . pain and suffering, [and] mental anguish or emotional harm[.]" *Id.* § 2A:58C-1(b)(2).

"In implementing the NJPLA, the Legislature intended 'to limit the expansion of products-liability law' and 'to limit the liability of manufacturers so as to balance[] the interests of the public and the individual with a view towards economic reality.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (alteration in original) (quoting *Zaza v. Marquess & Nell, Inc.*, 675 A.2d 620, 627 (N.J. 1996)). "The New Jersey Supreme Court has explained that '[t]he language chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products.'" *Id.* (first alteration in original) (quoting *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007)). As such, the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991); *see also Walters v. Carson*, No. 11-6545, 2012 WL 6595732, at *2 (D.N.J. Dec. 17, 2012) ("It is well established in this Circuit that the [NJ]PLA creates 'an exclusive statutory cause of action' for products liability claims asserted under New Jersey law." (citation omitted)).

In its analysis, the Court "must ascertain the type of harm that a plaintiff is alleging" and "look at the essence of the claims [to] decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action."

*Hindermyer*, 419 F. Supp. 3d at 818 (internal quotation marks and citation omitted). "Recognizing the NJPLA's broad scope, New Jersey federal and state courts have consistently dismissed product liability-related claims based on common law theories when at the heart of those theories is the potential harm caused by a product." *Zimmerman v. Home Depot, Inc.*, No. 24-4353, 2024 WL 5126832, at *4 (D.N.J. Dec. 16, 2024) (quotation marks omitted) (quoting *Hindermyer*, 419 F. Supp. 3d at 818); *see, e.g.*, *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) (dismissing negligence claim because "[u]nder New Jersey law[,] negligence is no longer viable as a separate claim for harm caused by a defective product"); *Chester v. Bos. Sci. Corp.*, No. 16-2421, 2017 WL 751424, at *4 (D.N.J. Feb. 27, 2017) (dismissing claim for intentional infliction of emotional distress because it is subsumed by the NJPLA).

Here, all of Plaintiff's claims relate to alleged harm caused by Poland Spring water. (*See generally* Compl.) Specifically, Plaintiff alleges that Defendant: (1) was negligent in "knowingly and without care [selling] Plaintiff *defective water*" (Count Two); (2) "assaulted and battered Plaintiff by knowingly selling the *defective product*" (Counts Three and Four); and (3) "cause[d] intentional infliction of emotional distress to Plaintiff when Defendant[] sold Plaintiff the *defective water*" (Count Five). (*Id.* at 2 (emphasis added).) These claims are no more than traditional product liability claims disguised as alternative causes of action, which are routinely dismissed as being subsumed by the NJPLA. *See, e.g.*, *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 597 n.5 (D.N.J. 2015) (collecting cases). The Court, accordingly, grants Defendant's Motion to Dismiss Counts Two through Five of the Complaint.[6]

---

[6] Because the Court finds that Counts Two through Five are dismissed as being subsumed by the NJPLA, the Court need not consider Defendant's alternative arguments that Plaintiff fails to state claims for negligence, assault, battery, and intentional infliction of emotional distress. (*See* Def.'s Moving Br. 8-11.)


### B. Plaintiff's Claim Under the NJPLA

Defendant argues that Plaintiff's NJPLA claim should be dismissed for multiple reasons: (1) "Plaintiff broadly refers to 'Poland Spring Water' but fails to identify the specific product"; (2) "Plaintiff does not provide any timeframe for when she consumed the product"; (3) "Plaintiff fails to state the intended purpose of [the] product"; (4) "Plaintiff fails to allege any defect in the product"; (5) "Plaintiff's Complaint also lacks facts to adequately satisfy the causation element"; and (6) "Plaintiff fails to allege any warning defect." (Def.'s Moving Br. 6-7.) Plaintiff argues in opposition, without legal or factual support, that: (1) "the NJPLA does not require [the] information" Defendant complains is missing; (2) Defendant relies on "not well-established law"; and (3) Plaintiff's claims are "reasonable and probable" because they are "true and valid." (Pl.'s Opp'n Br. 3-4.)

To state a claim under the NJPLA, a plaintiff must adequately allege that: (1) the product at issue was manufactured by the defendant and was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect was the factual and proximate cause of the plaintiff's injury; and (4) the injured plaintiff was a foreseeable user of the product. *Durkin v. Paccar, Inc.*, No. 10-2013, 2010 WL 4117110, at *6 (D.N.J. Oct. 19, 2010) (first citing *Myrlak v. Port Auth. of N.Y. & N.J.*, 723 A.2d 45, 52 (N.J. 1999); then citing *Zaza*, 675 A.2d at 627; and then citing *Jurado v. W. Gear Works*, 619 A.2d 1312, 1317 (N.J. 1993)). There are three types of product defects under the NJPLA: "(1) design defect; (2) manufacturing defect; and (3) warning[]

defect."[7] *Eisenbrey v. Wal-Mart Stores E., LP*, No. 24-6299, 2024 WL 4712833, at *3 (D.N.J. Nov. 7, 2024) (citing *Stich v. Smith & Nephew*, No. 20-13811, 2021 WL 1997411, at *3 (D.N.J. May 19, 2021)). "The 'only difference' among the types of claims is 'the nature of the alleged defect.'" *Id.* (citation omitted).

      Here, Plaintiff's allegations fall woefully short. *First*, Plaintiff fails to identify the specific product that she claims is defective, a critical element of a claim under the NJPLA. (*See generally* Compl.); N.J. Stat. Ann. § 2A:58C-2; *see also Vandegrift v. Bic USA Inc.*, No. 19-11471, 2020 WL 3468196, at *3 (D.N.J. June 25, 2020) ("Ultimately, whether a product is defective requires a policy judgment about *the specific product in question*." (emphasis added)). As Defendant notes, Plaintiff only broadly refers to "Poland Spring Water," but "Poland Spring products are sold in various forms, including plastic bottles, aluminum containers, and multiple sizes." (Def.'s Moving Br. 6.) Plaintiff also fails to provide the exact timing of purchase of the allegedly defective product, only vaguely stating in the Complaint that the purchases occurred after September 2021. (*See* Compl. 4.) Without more from Plaintiff on the actual product purchased and the timing of those purchases, it is impossible to discern what specific Poland Spring product is at issue.

      *Second*, Plaintiff fails to plead facts regarding the product's "intended purpose." *See* N.J. Stat. Ann. § 2A:58C-2. Pleading a claim under the NJPLA requires allegations that "the product causing the harm was not reasonably fit, suitable or safe for *its intended purpose*." *Id.* (emphasis added). Because Plaintiff fails to allege the product's intended purpose, even if its purpose might

---

[7] For a design defect, a plaintiff "must plead either that the product's risk [of harm] outweighs its [utility] or that an alternate design exists." *Eisenbrey*, 2024 WL 4712833, at *3 (alterations in original) (quoting *Stich*, 2021 WL 1997411, at *4). For a manufacturing defect, a plaintiff must plead facts related to how "the 'product may be measured against the same product as manufactured according to the manufacturer's standards.'" *Id.* (quoting *Hindermyer*, 419 F. Supp. 3d at 826). Lastly, for a warning defect, a plaintiff must plead allegations regarding an insufficient warning. *Id.*

be straightforward, Plaintiff's NJPLA allegations are insufficient. *See Boldman v. Wal-Mart Stores, Inc.*, No. 16-4, 2016 WL 589683, at *3 (D.N.J. Feb. 11, 2016) (dismissing NJPLA claim in part because the plaintiff failed to identify the product's "intended purpose, or any reasonably foreseeable purpose, which is one of the required elements of a products liability claim"); *see also Eisenbrey*, 2024 WL 4712833, at *3 (noting plaintiff's failure to identify intended purpose of product at issue).

*Third*, Plaintiff fails to identify what the defect itself is and how that alleged defect caused any harm. Plaintiff alleges in her Complaint that she "has been purchasing predominately Poland Spring Water since September 2021," that she "then experienced an influx" of physical symptoms, and that after she "purchased Bowl and Basket purified water," she noted she had fewer physical symptoms. (Compl. 2-3.) As Defendant notes, however, such allegations are "only conclusory assertions of harm without identifying what was wrong with the product or how it was defective." (Def.'s Opp'n Br. 6.) This makes it not only difficult for the Court to discern what purported defect is at issue, *see Eisenbrey*, 2024 WL 4712833, at *3 (noting three types of defects), but also makes the Complaint's allegations deficient, *see, e.g., Durkin*, 2010 WL 4117110, at *9 (noting that a "conclusory statement" merely "alleg[ing] that something was wrong with the [purportedly defective] product but . . . fail[ing] to identify what was wrong" is insufficient to state a claim); *Stich*, 2021 WL 1997411, at *3 (noting "conclusory allegations fall short of alleging a failure to warn claim" where plaintiff "does not identify what warnings were on the [product], if any, or, specifically, what dangers should have been disclosed"); *Vicente v. DePuy Synthes Cos.*, 570 F. Supp. 3d 232, 243 (D.N.J. 2021) (finding that "boilerplate, conclusory allegation—that the [d]efendants' devices 'were defective in their manufacturing when they left the hands of defendants[] in that they deviated from product specifications'" was not sufficient to plead facts

10

supporting a manufacturing defect claim); *Eisenbrey*, 2024 WL 4712833, at *4 (noting plaintiff failed to state a warning defect claim because complaint lacked "allegations regarding an insufficient warning"). "[T]he mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." *Eisenbrey*, 2024 WL 4712833, at *3 (internal quotation marks and citation omitted). Plaintiff's allegations regarding the purported defect and the harm that defect caused, therefore, are insufficient. *See, e.g.*, *Zimmerman*, 2024 WL 5126832 (granting motion to dismiss where "the [c]omplaint does not allege any design defect, manufacturing defect, or warning[] defect with respect to the [product at issue], and the fact that [p]laintiff was allegedly injured as a result of the pipe is not sufficient to show that a defect existed").

For these reasons, Plaintiff fails to plead a claim under the NJPLA. Defendant's Motion to Dismiss Count One is, accordingly, granted.[8]

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted, Plaintiff's Complaint is dismissed without prejudice, and Plaintiff's Motions are denied as moot. The Court will issue an Order consistent with this Memorandum Opinion.

 

                                             /s/ Michael A. Shipp
                                             **MICHAEL A. SHIPP**
                                             **UNITED STATES DISTRICT JUDGE**

Dated: November 17th, 2025

---

[8] Because Plaintiff's Complaint is dismissed in its entirety, the Court denies Plaintiff's Motions as moot and need not substantively address them.