NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CAROL-LORIE O. SMITH,<br><br>                    Plaintiff,<br><br>          v.<br><br>BLUETRITON BRANDS,<br><br>                    Defendant. | Civil Action No. 25-3337 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant BlueTriton Brands's ("Defendant" or "BlueTriton Brands") unopposed Motion to Dismiss (ECF No. 28) Plaintiff Carol-Lorie O. Smith's ("Plaintiff") Amended Complaint (ECF No. 27). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss (ECF No. 28) is granted.

I.    BACKGROUND

A.    Factual Background[1]

Plaintiff began purchasing Poland Spring water in September 2021 after she relocated to East Windsor, New Jersey. (Am. Compl. 2, ECF No. 27.) Plaintiff purchased "the 16.9 ounce bottles in the 24 case for the purpose of drinking it, approximately 3 cases every 2 weeks." (*Id.*) Sometime thereafter, Plaintiff claims she "experienced an influx of stomach pains and burning, hair loss, difficulty losing weight, [polycystic ovary syndrome], and loss of eyesight[,]" and

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

"noticed she developed a spot on her breast around the time that she began consuming the water." (*Id.*) Despite this, Plaintiff "continued to drink the water[,] not paying attention [to] the immediate effects of the water." (*Id.*) Plaintiff claims that her eyesight became "increasingly worst [*sic*]" and she also developed "migraines and lack of energy." (*Id.*) For Plaintiff, "hot tea, specifically, was exceptionally difficult to drink." (*Id.* at 2-3.) "Plaintiff[,] upon drinking the water one day, on or about April 26, 2024, realized that there was [a] burning after sipping on the water[,]" but Plaintiff did not experience that same burning after "[eating] a lollipop."[2] (*Id.* at 3.) Plaintiff claims she then "drank Arizona Iced Tea while eating her meal" and "belched loudly." (*Id.*) Plaintiff typically had "difficulty eating because of drinking the water" and realized that when she drank the water, "she had not been belching." (*Id.*) Upon this realization, Plaintiff "purchased Bowl and Basket purified water and noticed that there was exceptionally less burning, if any" and over time, "Plaintiff noticed an increase in eyesight; a reduction in pain; . . . the ability to drink more water; an increase in fingernail growth; and added and more peaceful sleep." (*Id.*) Plaintiff claims that she then researched the manufacturer of the Poland Spring water and "discovered that Nestle had a history of selling defective and subpar water." (*Id.*) Plaintiff claims that "[s]ince discontinuing the use of the Poland Spring water in April 2024, Plaintiff no longer has problems with her eyesight[ and] Plaintiff's body functions have returned to normal, [as] Plaintiff has had no migraines, no sleep issues, and Plaintiff is enjoying drinking tea again." (*Id.*)

In light of these facts, Plaintiff claims that Defendant violated her rights by: (1) "[m]anufactur[ing], market[ing,] and [selling] Poland Spring [w]ater, specifically the 16.9 [ounce] bottles in the 24 case, knowing that the product was below adequate performance standard,

---

[2] Plaintiff recognizes that she "was extra sensitive at the time because she was recovering from a sickness and was working hard to heal her body." (Am. Compl. 3.)

lacked adequate warnings or instructions, and was designed in a defective manner"; (2) being negligent when Defendant "knowingly and without care sold Plaintiff defective water"; (3) "assault[ing] and batter[ing] Plaintiff by knowingly selling the defective product"; and (4) "caus[ing] intentional infliction of emotional distress to Plaintiff[.]" (*Id.* at 1-2.) Plaintiff claims she is entitled to damages totaling to three billion dollars as a result of this purported harm and seeks an injunction requiring Defendant to "recall the defective water, or to make a public service announcement about the quality of the water and add sufficient labeling disclosing such information." (*Id.* at 3-4.)

### B.    Procedural Background

In August 2024, Plaintiff, proceeding *pro se*, initially brought this case in the Superior Court of New Jersey, Mercer County, naming as defendants Nestle S.A., BlueTriton Brands, Poland Spring Water, Nestle Water, and "their subsidiaries." (Compl. 1., ECF. No. 1; Pet. for Removal *1[3].) In March 2025, Plaintiff subsequently filed an Amended Complaint in state court, naming only BlueTriton Brands and its subsidiaries. (Pet. for Removal *2.) Shortly thereafter, the state court dismissed all named defendants, other than BlueTriton Brands, from the matter for failure to prosecute under New Jersey state law. (*Id.*) In April 2025, Defendant removed the matter to this Court. (*Id.*)

On June 16, 2025, Defendant filed a motion to dismiss. (*See generally* Mot. to Dismiss Compl.). Plaintiff thereafter filed three motions: (1) a motion for default judgment (*see generally* Mot. for Default J., ECF No. 13); (2) a June 23, 2025, motion for summary judgment (June 23, 2025, Mot. for Summary J., ECF No. 14); and (3) a June 29, 2025, motion for summary judgment

---

[3] Page numbers preceded by an asterisk refer to the page numbers noted in the ECF header.

(June 29, 2025, Mot. for Summary J., ECF No. 16). On November 17, 2025, the Court issued a Memorandum Opinion granting Defendant's motion to dismiss and denying Plaintiff's motions as moot. (*See generally* Nov. 17, 2025, Mem. Op., ECF No. 25; Nov. 17, 2025, Order, ECF No. 26.) The Court gave Plaintiff an opportunity to amend her Complaint. (*See* Nov. 17, 2025, Order 2.)

On December 10, 2025, Plaintiff filed an Amended Complaint against Defendant and its subsidiaries.[4] (Am. Compl., ECF No. 27.) The Court identifies five counts alleged in the Amended Complaint: (1) product liability under the New Jersey Product Liability Act (the "NJPLA") ("Count One"); (2) negligence ("Count Two"); (3) assault ("Count Three"); (4) battery ("Count Four"); and (5) intentional infliction of emotional distress ("Count Five"). (*See generally id.*)

On December 29, 2025, Defendant filed a motion to dismiss the Amended Complaint. (*See generally* Def.'s Mot. to Dismiss Am. Compl., ECF No. 28.) Plaintiff failed to file an opposition to Defendant's motion in accordance with the deadline provided by the Federal Rules of Civil Procedure.[5] On May 14, 2026, out of an abundance of caution, the Court issued a Text Order providing Plaintiff one final opportunity to file an opposition by June 9, 2026. (*See generally* May 14, 2026, Text Order, ECF No. 36.) Plaintiff never filed an opposition.

## II.    <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[4] Although Plaintiff asserts the Amended Complaint against Defendant and its "subsidiaries[,]" Plaintiff does not name any specific entity other than Defendant. (*See generally* Am. Compl.)

[5] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Defendant argues that the Amended Complaint should be dismissed in its entirety because, "with limited additional factual allegations[,] Plaintiff's Amended Complaint fails to cure the

5

pleading deficiencies in her initial Complaint[.]"[6] (Def.'s Moving Br. 1, ECF No. 28-4.) The Court agrees and finds that Plaintiff's Amended Complaint fails for the same reasons that Plaintiff's original Complaint failed.[7] (*See generally* Nov. 17, 2025, Mem. Op.) Specifically, the Court once again finds that: (1) Plaintiff's common-law claims are subsumed by the NJPLA and should therefore be dismissed; and (2) Plaintiff has failed to state a claim under the NJPLA. The Court addresses each finding below.

### A.   Subsumption Under the NJPLA

This Court previously dismissed Plaintiff's common-law claims as subsumed by the NJPLA. (*See generally id.*) As this Court previously noted (*see id.* at 5), the NJPLA provides that:

> [a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to

---

[6] The Court notes the following new allegations and information contained in the Amended Complaint: (1) "Plaintiff purchased the 16.9 ounce bottles in the 24 case for the purpose of drinking it, approximately 3 cases every 2 weeks"; (2) Plaintiff "noticed she developed a spot on her breast around the time that she began consuming the water"; (3) Plaintiff "[attributed] the pain to . . . acid reflux"; (4) Plaintiff realized there was burning upon sipping the water on or about April 26, 2024, at a time that she "was extra sensitive . . . because she was recovering from a sickness and was working hard to heal her body"; and (5) that since discontinuing the use of Poland Spring water in April 2024, Plaintiff no longer has migraines, sleep issues, problems with her eyesight, has normal bodily functions and "is enjoying drinking tea again." (Am. Compl. 1-3.)

[7] The Court notes that, although Defendant's motion is unopposed, because Plaintiff is proceeding *pro se*, the Court does not grant the Motion to Dismiss solely on that basis and instead undertakes a merits analysis. *See, e.g., Chocallo v. I.R.S. Dep't of Treasury*, 145 F. App'x 746, 747-48 (3d Cir. 2005) ("The District Court erred, however, by relying on a local rule to grant the motion to dismiss a *pro se* litigant's complaint as unopposed without undertaking a merits analysis." (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991))); *Patrick v. N.J. State Prison*, No. 18-17324, 2025 WL 262237, at *5 (D.N.J. Jan. 22, 2025) ("[G]iven [p]laintiff's *pro se* status, the Court will undertake its own independent analysis of the merits of the [m]oving [d]efendants' arguments and the sufficiency of [p]laintiff's allegations.").

6

> contain adequate warnings or instructions, or c. was designed in a
> defective manner.

N.J. Stat. Ann. § 2A:58C-2. The NJPLA defines "product liability action" as "*any claim or action*

*brought by a claimant for harm caused by a product, irrespective of the theory underlying the*

*claim*, except actions for harm caused by breach of an express warranty." *Id.* § 2A:58C-1(b)(3)

(emphasis added). The term "harm" is defined to include "physical damage to

property, . . . personal physical illness, . . . pain and suffering, [and] mental anguish or emotional

harm[.]" *Id.* § 2A:58C-1(b)(2). "The New Jersey Supreme Court has explained that '[t]he language

chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing

virtually all possible causes of action relating to harms caused by consumer and other products.'"

*Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (first alteration in

original) (quoting *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007)). As a result, the NJPLA

"effectively creates an exclusive statutory cause of action for claims falling within its purview."

*Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991); *see also Walters v. Carson*,

No. 11-6545, 2012 WL 6595732, at *2 (D.N.J. Dec. 17, 2012) ("It is well established in this Circuit

that the [NJ]PLA creates 'an exclusive statutory cause of action' for products liability claims

asserted under New Jersey law." (citation omitted)).

The new factual allegations in Plaintiff's Amended Complaint do not remedy the reasons

why this Court initially dismissed Counts Two through Five. (*See* Nov. 17, 2025, Mem. Op. 5-7.)

Rather, Plaintiff's Amended Complaint continues to allege that Defendant: (1) was negligent in

"knowingly and without care [selling] Plaintiff *defective water*" (Count Two); (2) "assaulted and

battered Plaintiff by knowingly selling the *defective product*" (Counts Three and Four); and

(3) "cause[d] intentional infliction of emotional distress to Plaintiff when Defendant[] sold

Plaintiff the *defective water*" (Count Five). (Am. Compl. 1-2 (emphasis added).) As a result,

7

Counts Two through Five continue to be traditional product liability claims disguised as alternative causes of action, which are routinely dismissed as being subsumed by the NJPLA. *See, e.g.,* *Clements v. Sanofi-Aventis, U.S., Inc.,* 111 F. Supp. 3d 586, 597 n.5 (D.N.J. 2015) (collecting cases).

The Court, therefore, grants Defendant's Motion to Dismiss Counts Two through Five of the Amended Complaint for the same reasons that it previously dismissed those claims.[8] (*See* Nov. 17, 2025, Mem. Op. 5-7.)

### B.     Plaintiff's Claim Under the NJPLA

Defendant argues that Plaintiff's NJPLA claim should be dismissed for multiple reasons: (1) "[a]s in the original Complaint, Plaintiff fails to allege any defect in the product"; (2) "Plaintiff fails to allege any manufacturing defect"; (3) "Plaintiff's Amended Complaint . . . lacks facts to adequately satisfy the causation element"; and (4) "Plaintiff[] . . . fails to allege any warning defect." (Def.'s Moving Br. 8-9.) The Court agrees.

To state a claim under the NJPLA, a plaintiff must adequately allege that: (1) the product at issue was manufactured by the defendant and was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect was the factual and proximate cause of the plaintiff's injury; and (4) the injured plaintiff was a foreseeable user of the product. *Durkin v. Paccar, Inc.,* No. 10-2013, 2010 WL 4117110, at *6 (D.N.J. Oct. 19, 2010) (first citing *Myrlak v. Port Auth. of N.Y. & N.J.,* 723 A.2d 45, 52 (N.J. 1999); then citing *Zaza v. Marquess & Nell, Inc.,* 144 N.J. 34, 675 A.2d 620, 627 (N.J. 1996); and then citing *Jurado v. W. Gear Works,* 619

---

[8] Because the Court finds that Counts Two through Five are dismissed as being subsumed by the NJPLA, the Court, again, need not consider Defendant's alternative arguments that Plaintiff fails to state claims for negligence, assault, battery, and intentional infliction of emotional distress. (*See* Def.'s Moving Br., 11-14.)

A.2d 1312, 1317 (N.J. 1993)). There are three types of product defects under the NJPLA: "(1) design defect; (2) manufacturing defect; and (3) warning[] defect."[9] *Eisenbrey v. Wal-Mart Stores E., LP*, No. 24-6299, 2024 WL 4712833, at *3 (D.N.J. Nov. 7, 2024) (citing *Stich v. Smith & Nephew, Inc.*, No. 20-13811, 2021 WL 1997411, at *3 (D.N.J. May 19, 2021)). "The 'only difference' among the types of claims is 'the nature of the alleged defect.'" *Id.* (citation omitted).

Plaintiff has arguably cured some of the deficiencies the Court previously identified (*see* Nov. 17, 2025, Mem. Op. 9-11), as the Amended Complaint now alleges that: (1) the product at issue is "the 16.9 [ounce] bottles in the 24 case" that were purchased around April 2024; and (2) Plaintiff purchased the bottled water "for the purpose of drinking it" (Am. Compl. 1-2). The allegations in Plaintiff's Amended Complaint, however, still fall short.

Plaintiff still fails to allege what the defect itself is and how that alleged defect caused any harm. (*See generally id.*) Plaintiff alleges in the Amended Complaint that she "has been purchasing predominately Poland Spring water since September 2021," that she "then experienced an influx" of physical symptoms, and that after she "purchased Bowl and Basket purified water," she noted she had fewer physical symptoms. (Am. Compl. 2-3.) As Defendant again notes, however, "the Amended Complaint offers only conclusory assertions of harm without identifying what was wrong with the product or how it was defective." (Def.'s Moving Br. 8.) This makes it not only difficult for the Court to discern what purported defect is at issue, *see Eisenbrey*, 2024 WL 4712833, at *3 (noting three types of defects), but also makes the Amended Complaint's

---

[9] For a design defect, a plaintiff "must plead either that the product's risk [of harm] outweighs its [utility] or that an alternate design exists." *Eisenbrey*, 2024 WL 4712833, at *3 (alterations in original) (quoting *Stich*, 2021 WL 1997411, at *4). For a manufacturing defect, a plaintiff must plead facts related to how "the 'product may be measured against the same product as manufactured according to the manufacturer's standards.'" *Id.* (quoting *Hindermyer*, 419 F. Supp. 3d at 826). For a warning defect, a plaintiff must plead allegations regarding an insufficient warning. *Id.*

9

allegations deficient, *see, e.g.*, *Durkin*, 2010 WL 4117110, at *9 (noting that a "conclusory statement" merely "alleg[ing] that something was wrong with the [purportedly defective] product but . . . fail[ing] to identify what was wrong" is insufficient to state a claim); *Stich*, 2021 WL 1997411, at *3 (noting "conclusory allegations fall short of alleging a failure to warn claim" where plaintiff "does not identify what warnings were on the [product], if any, or, specifically, what dangers should have been disclosed"); *Vicente v. DePuy Synthes Cos.*, 570 F. Supp. 3d 232, 243 (D.N.J. 2021) (finding that "boilerplate, conclusory allegation—that the [d]efendants' devices 'were defective in their manufacturing when they left the hands of defendants[] in that they deviated from product specifications'" was not sufficient to plead facts supporting a manufacturing defect claim); *Eisenbrey*, 2024 WL 4712833, at *4 (noting plaintiff failed to state a warning defect claim because complaint lacked "allegations regarding an insufficient warning"). "[T]he mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." *Eisenbrey*, 2024 WL 4712833, at *3 (internal quotation marks and citation omitted). Plaintiff's allegations in her Amended Complaint, therefore, remain insufficient to state a claim under the NJPLA.

Defendant's Motion to Dismiss Count One is, accordingly, granted.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted.[10] The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: July 6th, 2026

---

[10] Because Plaintiff is proceeding *pro se*, the Court dismisses the Amended Complaint without prejudice. Plaintiff is cautioned, however, that the Court will afford Plaintiff only one more opportunity to amend her allegations to state a claim upon which relief can be granted.